IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| MICHELLE BERGMAN, *et al*., | ) | |
| | ) | |
| *Plaintiffs*, | ) | Class Action |
| | ) | |
| v. | ) | |
| | ) | |
| SPRUCE PEAK REALTY, LLC and | ) | Civil Action No. 2:11-cv-00128-WKS |
| STOWE MOUNTAIN LODGE, LLC, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION TO
CONSOLIDATE ACTIONS, COMPEL ARBITRATION AND
<u>STAY THE LITIGATION PENDING ARBITRATION</u>**

BARR & ASSOCIATES, P.C.
125 Mountain Road
Stowe, VT 05672
Phone: 802-253-6272
Fax: 802-253-6055
www.barrlaw.com

Plaintiffs hereby respond to and oppose Defendants' August 17, 2012 Motion to: (A) consolidate this action with Civil Action No. 2:11-cv-127, (B) compel arbitration of this action, and (C) stay the consolidated action pending arbitration (ECF No. 57).  This Response and Opposition is based on the following Memorandum of Law and Exhibits A to F hereto. Plaintiffs state as follows:

<u>**MEMORANDUM OF LAW**</u>

I.      <u>**INTRODUCTION AND FACTUAL BACKGROUND**</u>

On May 13, 2011, Plaintiffs filed a Class Action Complaint (ECF No. 1) on behalf of the approximately 324 persons and entities that own interests in the Stowe Mountain Lodge Condominium residential units that are burdened by the Shared Amenities and Services Covenant (the "SAS Covenant") (ECF No. 41-13).

The SAS Covenant is enforced by Defendant Spruce Peak Realty, LLC ("SPR"), the owner of the Shared Amenities Unit -- one of the three commercial units created by Defendant Stowe Mountain Lodge, LLC ("SML") in the Declaration of Covenants, Conditions, Easements and Restrictions for Stowe Mountain Lodge Condominium (the "SML Declaration") (ECF No. 41-1).  SML, as the Declarant, sold the residential units to Plaintiffs.

Plaintiffs' Class Action Complaint alleged that SPR and SML's creation and implementation of the SAS Covenant violated federal and State law, including the Interstate Land Sales Full Disclosure Act of 1968, 15 U.S.C. §§ 1701-1720 ("ILSA"), the Vermont Common Interest Ownership Act, 27A V.S.A. §§ 1-101 to 4-120 ("VCIOA"), the Vermont Consumer Fraud Act, 9 V.S.A. §§ 2451-2480g ("VCFA"), and Vermont common law.

A.      <u>**Defendants' First Motion to Dismiss.**</u>

On July 13, 2011, Defendants filed a 43-page motion to dismiss the Class Action Complaint (the "First MTD") (ECF No. 17-1) contending that: (i) Plaintiffs failed to state a claim

upon which relief could be granted; (ii) Plaintiffs did not have standing to bring the lawsuit; (iii) Plaintiffs' claims were contractually and statutorily time-barred; and (iv) Plaintiffs failed to plead fraud with particularity.

Defendants were aware at the time they filed the First MTD that the SAS Covenant included the following arbitration clause:

> Notwithstanding anything to the contrary in this Shared Amenities and Services Covenant, in no event shall any Owner have the standing to exercise any rights under this Shared Amenities and Services Covenant.  In the event any such Owner is aggrieved and wishes to pursue a claim with respect to any provision hereunder or otherwise against **Shared Amenities Unit Owner [Defendant SPR]**, such Owner may only do so through action it causes the Condominium Association to take on its behalf. All disputes not involving claims for indemnity and arising under this Shared Amenities and Services Covenant between Shared Amenities Unit Owner, on the one hand, and the Condominium Association or the Front Four Association, as the case may be, on the other hand, shall, upon the request of either party, be resolved by binding arbitration conducted by a single, neutral arbitrator.  (ECF No. 41-13, at 38 (emphasis added).)

Nevertheless, Defendants moved to dismiss Plaintiffs' Class Action Complaint in its entirety and on the merits rather than moving to compel arbitration.  In the process, Defendants purported to reserve the right to invoke arbitration at some later date of their choosing.  See ECF No. 17-1, at 4 n.3 ("The SAS Covenant requires SMLCOA to pursue claims exclusively in arbitration.  By filing this motion, Defendants are not waiving their right to later seek to compel arbitration.").

On August 8, 2011, Plaintiffs filed their 55-page First Amended Class Action Complaint (the "FAC") (ECF No. 23), which effectively mooted the First MTD.

**B.    Defendants' Second Motion to Dismiss.**

On September 21, 2011, Defendants filed a 55-page motion to dismiss the FAC (the "Second MTD") (ECF No. 28-1) in which they asserted that: (i) Plaintiffs failed to state a claim upon which relief could be granted; (ii) Plaintiffs did not have standing to bring the lawsuit; (iii)

Plaintiffs' claims were contractually and statutorily time-barred; and (iv) Plaintiffs failed to plead fraud with particularity.

Despite being fully aware of the SAS Covenant's arbitration clause, Defendants attempted to dismiss the FAC in its entirety and on its merits while seeking to preserve arbitration as an option down the road. See Second MTD (ECF No. 28-1), at 3 n.3.

Defendants admitted in the Second MTD that:

> The Declaration and the SAS Covenant are <u>two separate documents</u> related to the same transaction but <u>governing different parts of it</u>. The former deals with ownership of condominium property and is expressly governed by VCIOA, while the latter is a license and use covenant governing not ownership but use of luxury amenities and services owned or provided by the Shared Amenities Unit Owner [Defendant SPR].… Moreover the language in both documents makes clear that <u>they are not to be read as one</u>…. <u>Id.</u> at 16 (emphasis added).

On November 30, 2011, Plaintiffs opposed Defendants' Second MTD via a 55-page Memorandum of Law in which they asserted, in part, that the SAS Covenant's arbitration clause is unconscionable and unenforceable (see ECF No. 35, at 9-16 and 31-32). Plaintiffs explained that the arbitration clause purports to force residential unit owners to bring an arbitration proceeding against the Shared Amenities Unit Owner – Defendant SPR – only through the Stowe Mountain Lodge Condominium Owners Association (the "SMLCOA"), yet Defendants will always control the SMLCOA by virtue of the voting rights allocations contained in the SML Declaration. Accordingly, the SMLCOA could never be forced to arbitrate with Defendants.[1]

On January 30, 2012, Defendants filed a 29-page reply memorandum in support of their Second MTD. Once again, they failed to demand or request arbitration, but rather they continued to seek complete dismissal on the merits. See ECF No. 36.

---

[1] The SAS Covenant's arbitration clause does not cover claims against Defendant SML. See ECF No. 41-13, at 38. See also Point V, below.

The Court accepted and considered <u>139</u> total pages of briefing on the Second MTD (which is more than double the 60 pages of total dispositive motion briefing allowed by the Local Rules), including 84 pages from Defendants.  Nowhere in those 84 pages – which included numerous humungous single-spaced footnotes – did Defendants attempt to invoke or demand arbitration.

**C.      <u>This Court Orders that the SAS Covenant Lawsuit Can Proceed.</u>**

On March 20, 2012, this Court issued a 43-page Memorandum Opinion and Order (ECF No. 40) on Defendants' Second MTD in which the Court ruled that the SAS Covenant Lawsuit could proceed in litigation as opposed to arbitration.  The Court held as follows:

> … Plaintiffs have stated a claim that certain terms within the arbitration clause of the SAS Covenant are unenforceable as unconscionable.  Plaintiffs are <u>entitled to present evidence</u> that the provision in the arbitration clause that forces them to act through the SMLCOA is unenforceable, and that therefore they are <u>not contractually barred from bringing suit</u>.

<u>Bergman v. Spruce Peak Realty, LLC</u>, 847 F. Supp. 2d 653, 666 (D. Vt. 2012) (Sessions, J.) (emphasis added) (hereafter, "<u>Bergman II</u>").

The Court then ruled on Defendants' numerous Second MTD arguments.  Along the way, the Court dismissed Plaintiffs' ILSA § 1703(a)(1) claim (FAC Count V) on statute-of-limitations grounds and dismissed FAC Counts IV, V and VI and portions of Counts I and III for failure to state a claim upon which relief could be granted.  Plaintiffs were given leave to replead the dismissed claims within 30 days.  <u>Bergman II</u>, 847 F. Supp. 2d at 675.

In response to <u>Bergman II</u>, Plaintiffs filed a 54-page Second Amended Complaint (the "SAC") (ECF No. 41) on April 19, 2012.  The SAC contains a number of amendments to the FAC.  The newly renumbered SAC Count IV (at ¶¶ 347-52) alleges Defendants violated ILSA § 1703(a)(2) by failing to disclose that Plaintiffs would be charged for a portion of the Condominium assessments allocated to the Shared Amenities Unit through the SAS Covenant

4

and the expenses associated with operating and maintaining the Exclusive Shared Amenities Unit Area.  See SAC ¶ 349.

**D.      Defendants' Third Motion to Dismiss.**

On June 7, 2012, Defendants moved to dismiss SAC Count IV on the merits (the "Third MTD") (ECF No. 52).  In their 11-page Third MTD, Defendants argued that Plaintiffs failed to plead several essential elements required of an ILSA § 1703(a)(2) claim.

On July 5, 2012 Plaintiffs opposed the Third MTD via a 23-page Memorandum of Law (ECF No. 53).

Nowhere in their Third MTD or in their 11-page reply memorandum of July 23, 2012 (ECF No. 54) in support of the Third MTD do Defendants assert that Plaintiffs should be compelled to arbitrate SAC Count IV -- or any of Plaintiffs' SAC claims.

**E.      Defendants' Latest Motion Seeks to Compel Arbitration, Etc.**

On August 17, 2012, while their Third MTD was still pending, Defendants filed a new 27-page motion to: (A) consolidate this SAS Covenant lawsuit (the "SAS Covenant Lawsuit") with the related case of Bergman v. Spruce Peak Realty, LLC, Civil Action No. 2:11-cv-127-WKS (the "Declaration Lawsuit"); (B) compel arbitration of this SAS Covenant Lawsuit; and (C) stay the consolidated Court action pending the outcome of the arbitration (the "SAS Motion") (ECF No. 57).

**F.      The AAA Proceeding.**

In May 2011, Plaintiffs filed with the American Arbitration Association (the "AAA") a class action arbitration proceeding (the "AAA Proceeding") concerning the SML Declaration. The SAS Motion comes hot on the heels of two very recent important decisions in the AAA Proceeding by Arbitrator Yaroslav Sochynsky (the "Arbitrator").

Specifically, on July 10, 2012, the Arbitrator issued: (1) a Partial Final Clause Construction Award (the "PFCCA") denying Plaintiffs' request for class arbitration; and (2) Procedural Order No. 3 ("PO No. 3") holding that certain of Plaintiffs' claims in the AAA Proceeding are arbitrable and that certain of those claims are non-arbitrable.  Copies of the PFCCA and PO No. 3 are attached hereto as **Exhibits A** and **B**, respectively.

On July 30, 2012, Defendants petitioned this Court in the Declaration Lawsuit for an order to confirm the PFCCA (Declaration Lawsuit ECF No. 36).

On August 3, 2012, Plaintiffs filed a response to the petition to confirm indicating that they had no objection (Declaration Lawsuit ECF No. 38).

On August 23, 2012, this Court granted Defendants' unopposed petition to confirm the PFCCA (Declaration Lawsuit ECF No. 40).

Due to the PFCCA and PO No. 3, the number of Claimants and the claims in the AAA Proceeding are quite limited.  Rather than a putative class action with 324 members, there are now only nine named Claimants (including two married couples).  Rather than the five counts in the First Amended Arbitration Demand (Declaration Lawsuit ECF No. 39-3) (the "FAAD"), there are now only three counts for (i) declaratory relief based on VCIOA and Vermont common law violations; (ii) monetary relief based on VCIOA violations; and (iii) breach of the SML Declaration.[2]

---

[2] Prior to the PFCCA, Respondents in the AAA Proceeding (who as Defendants here) contested the current Claimants' in-the-alternative argument to arbitrate on a consolidated basis.  In light of the PFCCA, Claimants have requested Respondents' consent to add an as-yet undetermined number of additional named claimants to the AAA Proceeding and for the AAA Proceeding to go forward on a consolidated basis.  The issues surrounding consolidated arbitration and the number of named claimants who would participate in such a proceeding if it were allowed may require briefing before the Arbitrator.  Finally, Claimants plan to amend the FAAD to reflect the Arbitrator's PFCCA and PO No. 3 rulings.

**G.    The AAA Proceeding is Relatively Minor in Scope Compared to a Consolidated Lawsuit.**

On the other hand, if the Court consolidates the remaining Declaration Lawsuit claims with the SAS Covenant Lawsuit claims, relief would be sought for 324 members of a putative class action and the scope of the combined case would be quite extensive in comparison to the AAA Proceeding, as shown in the following chart:

| AAA Proceeding Claims | Consolidated Declaration Lawsuit and SAS Covenant Lawsuit Claims |
|---|---|
| Declaratory relief based on VCIOA and Vermont common law violations (Count I) | Declaratory relief based on VCFA violations (Declaration Lawsuit Count I) |
| VCIOA Claim for Monetary Damages (Count II) | VCFA Claim for Monetary Damages (Declaration Lawsuit Count III) |
| In the alternative, Breaches of the SML Declaration (Count V) | Declaratory relief based on VCIOA, VCFA and Vermont common law violations (SAS Covenant Lawsuit Count I) |
| | VCIOA Claim for Monetary Damages (SAS Covenant Lawsuit Count II) |
| | VCFA Claim for Monetary Damages (SAS Covenant Lawsuit Count III) |
| | Violation of ILSA § 1703(a)(2) (SAS Covenant Lawsuit Count IV) |
| | In the alternative, for Breaches of the SAS Covenant (SAS Covenant Lawsuit Count V) |

Moreover, there would be no claim overlap between the consolidated lawsuit and the AAA Proceeding with the exception of one narrow issue.  Plaintiffs allege that they were damaged by Defendants' failure to disclose that Plaintiffs would be charged in their SAS Covenant fees for a portion of SPR's Condominium assessments.  Based on the different legal theories described below, Plaintiffs seek damages related to this "charge-back" issue in the Declaration Lawsuit and this SAS Covenant Lawsuit, and Claimants seek damages in the AAA Proceeding:

- In the Declaration Lawsuit, Plaintiffs seek damages under the VCFA for Defendants' failure to disclose that Plaintiffs would be charged in their Shared Amenities and Services Contributions for a portion of SPR's Condominium assessments.

- In the AAA Proceeding, the nine named Claimants seek damages based on Defendants' violation of VCIOA § 3-115, which requires each unit owner to pay the full amount of its Condominium assessments, by charging Claimants with a portion of Condominium assessments that the SML Declaration allocates to the Shared Amenities Unit.

- In this SAS Covenant Lawsuit, Plaintiffs seek damages under VCIOA § 3-115, the VCFA and ILSA § 1703(a)(2) based on Defendants' charging Plaintiffs with a portion of the Shared Amenities Unit's Condominium assessments (and also based on an in-the-alternative breach-of-contract theory).

This "charge-back" issue involves the SAS Covenant <u>and</u> the SML Declaration. Accordingly, Plaintiffs and Claimants in the three matters do not know which recovery theories will be upheld by this Court or the Arbitrator, so it was necessary to include claims in each action to protect all Plaintiffs and Claimants' rights.  By including these claims in the three matters, Plaintiffs and Claimants are not seeking a duplicative recovery of the same damages for the same individuals, but rather a ruling or rulings that all Plaintiffs and Claimants are entitled to the appropriate relief.  Moreover, if this Court were to consolidate the Declaration Lawsuit and the SAS Covenant Lawsuit, the otherwise unavoidable overlap of the charge-back issue would be minimized that much more.[3]

---

[3] In <u>Bergman II</u>, this Court expressed concern about the possibility that "a substantial amount of effort in the arbitration proceedings will be devoted to determining the appropriate treatment and interpretation of the SAS Covenant."  847 F. Supp. 2d at 664.  Plaintiffs are sensitive to concerns about potential duplication of effort, but there is little to no danger the SAS Covenant would become a focus of the AAA Proceeding.  The SAS Covenant is not even an exhibit to Claimants' FAAD (Declaration Lawsuit ECF No. 39-3), and the Arbitrator did not so much as mention the SAS Covenant in either the PFCCA or PO No. 3.  In short, the Arbitrator is dealing solely with claims "arising under" the SML Declaration (<u>see</u> PO No. 3, at 14-15, and PFCCA, at 2-3), and there is no reason why he would want or need to wade into interpreting the SAS Covenant.  <u>See generally</u> Point VII, below.

II.     **ARGUMENT**

**POINT I**

**THE SAS MOTION SHOULD BE DENIED AS AN
IMPROPER AND UNTIMELY FORUM-SHOPPING
ATTEMPT TO HAVE THIS COURT RECONSIDER
*BERGMAN II* MANY MONTHS BEYOND THE DEADLINE
FOR A RECONSIDERATION MOTION.**

In Bergman II, this Court held that: "… Plaintiffs have stated a claim that certain terms within the arbitration clause of the SAS Covenant are unenforceable as unconscionable."  847 F. Supp. 2d at 666.  Accordingly, the Court ruled that: "Plaintiffs are entitled to present evidence that the provision in the arbitration clause that forces them to act through the SMLCOA is unenforceable, and that therefore they are not contractually barred from bringing suit."  Id. (emphasis added).

Fifteen months after Plaintiffs commenced this case, 13 months after Defendants filed their First MTD, 11 months after filing their Second MTD, two months after filing their Third MTD, five months after Bergman II and barely a month after receiving the PFCCA and PO No. 3, Defendants pronounce suddenly and all-too-conveniently that "Now is the time" to compel arbitration of the very SAS Covenant Lawsuit claims that this Court ruled back in March could go forward in litigation.  SAS Motion, at 12 (emphasis added).

As explained below, the SAS Motion is nothing more than an improper and untimely forum-shopping attempt to have this Court reconsider its holding in Bergman II way beyond the deadline for a reconsideration motion.[4]

---

[4] Defendants' reliance (at 12) on a single sentence in Bergman II, namely the Court's statement that "In determining the scope of the arbitration demand, the arbitrator may deem a dispute over a change to the SAS Covenant to be a dispute that arises under the Declaration," 847 F. Supp. 2d at 664, is disingenuous at best.  The Court was simply acknowledging that the scope of the AAA Proceeding might conceivably be interpreted to include Plaintiffs' claim that Defendants wrongfully changed from a nightly fee based on occupancy to a quarterly fee regardless of occupancy.  But after Bergman II came down,
(Continued…)

Federal Rule of Civil Procedure 59(e) mandates that a motion to alter or amend a judgment "must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e) (emphasis added).  But where, as here, reconsideration is sought for an interlocutory order, that motion is not governed by Rule 59(e).  See generally Fed. R. Civ. P. 54(a) (defining a "Judgment" as used throughout the Federal Rules of Civil Procedure as including "a decree and any order from which an appeal lies").

As such, Local Rule 7(c) provides that: "A motion to reconsider a court order, other than one governed by Fed. R. Civ. P. 59 or 60, must be filed within 14 days from the date of the order."  Local Civ. R. 7(c) (emphasis added).

Even if the SAS Motion had been filed before the Local Rule 7(c) fourteen-day deadline of April 4, 2012 as a timely reconsideration motion, surely it would have failed.  See generally Cole v. Green Mtn. Landscaping, Inc., No. 2:09-cv-5 (ECF No. 24), slip op. at 2-3 (D. Vt. Aug. 18, 2009) (Sessions, C.J.) (explaining, inter alia, that "reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources," that the "standard for granting a motion to reconsider is strict," and that a reconsideration motion "is not intended to provide a dissatisfied party with an opportunity to advance new theories that the movant failed to advance in connection with the underlying motion") (internal quotes, brackets and citations omitted).  Cf. Official Comm. of Unsecured

---

Defendants did not ask the Arbitrator to assume jurisdiction over this subject matter.  On the contrary, Defendants implored the Arbitrator to dismiss all Declaration-related claims for lack of arbitral jurisdiction (save for an in-the-alternative breach-of-contract claim) so that such claims could be litigated in this Court.  See PO #3, at 6 (Exhibit B hereto).  Defendants' actions in the AAA Proceeding are utterly inconsistent with any perceived obligation to arbitrate, and to the extent there was any obligation to arbitrate the SAS Covenant nightly-to-quarterly-fee-switch issue, Defendants waived such right.  See Point III, below.  Moreover, the Arbitrator – who received a copy of Bergman II within days of its issuance – did not even mention the nightly-to-quarterly-fee change in his 40 pages of July 10, 2012 decisions.  Clearly, the Arbitrator was not inclined to take jurisdiction of this subject regardless of Defendants' litigation-centric strategy.  In short, Plaintiffs' SAC claims concerning Defendants' stealthy switch from a nightly to quarterly fee continue to rightfully belong in this Court.

Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (recognizing that district court discretion to revisit prior rulings is "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again") (internal quotation marks omitted).

As the First Circuit explained in affirming the denial of a reconsideration motion,

Litigation is not a game of hopscotch. It is generally accepted that a party may not, on a motion for reconsideration, advance a new argument that could (and should) have been presented prior to the district court's original ruling. This principle has deep prudential roots. Litigants normally must frame the issues in a case before the trial court rules. After that point, a litigant should not be allowed to switch from theory to theory like a bee in search of honey.

Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003) (citation omitted).

Of course, the SAS Motion is wildly and fatally late under Local Rule 7(c) and Rule 59(e). It should therefore be denied. Indeed, courts in this Circuit will enforce a reconsideration motion deadline "absent adequate justification for ignoring it." Algie v. RCA Global Commc'ns, Inc., 891 F. Supp. 875, 882 (S.D.N.Y. 1994), aff'd, 60 F.3d 956 (2d Cir. 1995). This is true even where the motion is as little as one day late. See, e.g., Dama v. Seirup, No. 96-cv-2557, 2008 WL 1957772, at *1 (E.D.N.Y. May 2, 2008). Cf. Decker v. Fish, 126 F. Supp. 2d 342, 349 (D. Vt. 2000) (Sessions, J.) (reconsideration motion filed two months beyond the then ten-day Local Rule deadline held untimely unless it falls under one of the exceptions in F.R.C.P. 60(b)(1)); Mayes v. Messercola, No. 94-cv-0026, 2000 U.S. Dist. LEXIS 19156, at *2 (N.D.N.Y. Dec. 21, 2000) (dismissing reconsideration motion because it was four days late); and Pacheco v. Vanwyk, No. 94-cv-456, 1998 U.S. Dist. LEXIS 850, at **1-2 (N.D.N.Y. Jan. 27, 1998) (dismissing reconsideration motion as "improper" because it was filed 25 days late, i.e., "well past" the ten-day deadline).

## POINT II

## DEFENDANTS ARE NOT ENTITLED TO RULE 60(b) RELIEF FROM *BERGMAN II*.

In this Circuit, an untimely reconsideration motion is treated as a Rule 60(b) motion for relief from a judgment or order.  Lora v. O'Heaney, 602 F.3d 106, 111 (2d Cir. 2010); see also Meilleur v. Strong, 682 F.3d 56, 60, 64 (2d Cir. 2012) (treating an untimely motion for reconsideration as a Rule 60(b) motion and denying same); and Decker, 126 F. Supp. 2d at 349 (treating untimely reconsideration motion as a Rule 60(b)(1) motion for relief based on excusable neglect and denying same).

The only conceivable Rule 60(b) subpart under which Defendants might try to fit the SAS Motion would be Rule 60(b)(1), which permits the Court to relieve a party or its legal representative from an order due to, inter alia, "excusable neglect…."  Fed. R. Civ. P. 60(b)(1).  The argument would be that, due to alleged "excusable neglect," Defendants' counsel failed to timely bring to this Court's attention the SAS Motion's various legal theories, arguments and authorities as to why Defendants suddenly believe the SAS Covenant Lawsuit's claims should be arbitrated.

But the law is clear that "[m]ere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the … excusable neglect necessary to justify Rule 60(b)(1) relief."  Nemaizer v. Baker, 793 F.2d 58, 62 (2d Cir. 1986).  As this Court explained in an analogous situation:

> Decker's motion to reconsider was filed two months and eleven days after the Court filed its order.  Therefore it is untimely under Local Rule 7.2(b) unless it falls under one of the exceptions listed in Fed.R.Civ.P. 60(b)(1).  The only reason Decker offers for failing to raise the arguments in his motion to reconsider earlier on in these proceedings is his discovery of the decision in Kent v. Katz.  Kent, however, involved a straightforward application of Federal Rule of Civil Procedure 26(a)(2) and its Advisory Committee's Notes, and under the law of this circuit, a party cannot, under Rule 60(b)(1), be relieved of the "burdens of a[ ] judgment entered against him due to the mistake or omission of his attorney by

reason of the latter's ignorance of the law."  Nemaizer v. Baker, 793 F.2d 58, 62 (2d Cir. 1986).  Therefore, Decker's motion to reconsider must be DENIED.

Decker, 126 F. Supp. 2d at 349 (footnotes omitted).

In short, the SAS Motion should be denied because Defendants are not entitled to Rule 60(b) relief from Bergman II.

**POINT III**

**EVEN IF THE SAS MOTION WERE SOMEHOW TIMELY, IT WOULD BE BASELESS AND MOOT BECAUSE DEFENDANTS WAIVED LONG AGO ANY RIGHT THEY MIGHT OTHERWISE HAVE HAD TO ARBITRATION.**

In determining "whether a party has waived its right to arbitration by expressing its intent to litigate the dispute in question," courts in this Circuit consider the following three factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice."  Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 159 (2d Cir. 2010) (internal quotes and citation omitted).

There is "no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration; rather, the above factors must be applied to the specific context of each particular case."  Id.

Sufficient prejudice to infer waiver has been found where, as here, a party seeking to compel arbitration "makes motions going to the merits of adversary's claims" or "delays invoking arbitration rights while the adversary incurs unnecessary delay or expense."  Cotton v. Slone, 4 F.3d 176, 179 (2d Cir. 1993) (citing cases).  See also Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991) ("Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be

found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense.").

Defendants' three Motions to Dismiss (ECF Nos. 17-1, 28-1 and 52), including the Third MTD that is still pending, all went to the merits of Plaintiffs' claims.  See generally Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits.") (internal quotes and citation omitted); and Com-Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574, 1577 (2d Cir. 1991) ("judgments under rule 12(b)(6) are on the merits, with res judicata effects") (internal quotes and citation omitted).

Federal courts in this Circuit and elsewhere have found waivers of arbitration when the party seeking to compel arbitration had moved previously for dismissal on the merits.  See, e.g., Baker & Taylor, Inc. v. AlphaCraze.com Corp., 602 F.3d 486, 492 (2d Cir. 2010) (holding that defendant waived right to arbitrate where "[t]his case has proceeded in the district court for nearly eight months, during which time [the plaintiff] sought and received discovery from other defendants and the parties engaged in motions practice going to the merits") (emphasis added); In re Mirant Corp., 613 F.3d 584, 592 (5th Cir. 2010) ("Castex's motions to dismiss gave it a full preview of MCAR's evidence and litigation strategy, particularly its arguments and evidence in response to Castex's affirmative defenses…."); Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd., 575 F.3d 476, 482 (5th Cir. 2009) (holding that defendant waived its right to arbitrate by effectively losing on a motion to dismiss despite the "lack of a formal ruling" from the district court on that motion); Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 589 F.3d 917, 921 (8th Cir. 2009) ("Advance America's motion to dismiss was extensive and exhaustive, and substantially invoked the litigation machinery.  Advance America drew the district court's attention to multiple matters of first impression, asserted Plaintiffs failed to state claims upon

14

which relief could be granted, and encouraged the district court to resolve the parties' entire dispute in Advance America's favor."); <u>Ritzel Commc'ns, Inc. v. Mid-American Cellular Tel. Co.</u>, 989 F.2d 966, 969 (8th Cir. 1993) ("The motion for dismissal represents a substantial, active invocation of the litigation process.  With this motion [to dismiss] the [cross-claim defendant] initiated steps in the litigation and required responsive action by [the cross-claim plaintiff] rather than immediately demanding arbitration."); and <u>Forrest v. Unifund Financial Grp., Inc.</u>, No. 04 Civ. 5151, 2007 WL 766297, at *6 (S.D.N.Y. Mar. 13, 2007) (waiver based on dispositive motion practice, where no discovery had been conducted).

The <u>Hooper</u> case is in many ways eerily similar to the instant case.  <u>Hooper</u> concerned payday-loan agreements containing mandatory arbitration clauses.  The class-action plaintiffs' complaint included one count asking the court to declare the arbitration clauses invalid because they were unconscionable and six counts challenging Advance America's various lending practices.  Advance America moved to dismiss the complaint on several grounds.  "In the last sentence of its brief, Advance America purported to 'reserve[ ] the right' to enforce the arbitration clauses in Plaintiffs' loan agreements, if the court denied its motion to dismiss." <u>Hooper</u>, 589 F.3d at 919.  <u>Cf.</u> First MTD (ECF No. 17-1), at 4 n.3 (purporting to reserve the right to arbitrate at a later date); and Second MTD (ECF No. 28-1), at 3 n.3 (same).[5]

After the district court rejected the motion to dismiss with respect to five of the lending-practices counts, Advance America moved to stay the case and compel arbitration.  <u>See</u> <u>Hooper</u>, 589 F.3d at 920; and <u>Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.</u>, No. 2:08-cv-

---

[5] Defendants' attempts in the First MTD and Second MTD to reserve the right to arbitrate at some unspecified point down the road are of no moment.  As the Eighth Circuit explained, "Advance America's statement in its motion to dismiss -- that it might seek arbitration if the district court denied its motion to dismiss -- did not forestall the prejudice Plaintiffs suffered.  A reservation of rights is not an assertion of rights." <u>Hooper</u>, 589 F.3d at 923.

04045, 2008 WL 4371360, at *2 (W.D. Mo. Sept. 22, 2008), aff'd, 589 F.3d 917 (8th Cir. 2009).[6]

The district court denied the motion for a stay and to compel arbitration and Advance America appealed.[7]  Noting that Advance America, in seeking a decision on the merits on each count, had sought "an immediate and total victory in the parties' dispute," the Eighth Circuit observed that Advance America "wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration."  Hooper, 589 F.3d at 922 (quoting Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995) (Posner, J.)).

The Hooper Court held that "'want[ing] to play heads I win, tails you lose ... is the worst possible reason' for [a party's] failing to move for arbitration sooner than it did."  Id. (quoting Cabinetree, 50 F.3d at 391) (bracketed text added in Hooper).  See generally Louisiana Stadium, 626 F.3d at 161 ("… a litigant is not entitled to use arbitration as a means of aborting a suit that did not proceed as planned in the District Court").

The forum shopping in the instant case is even more egregious than it was in Hooper. Here, Defendants not only "wanted to see how the case was going in federal district court before

---

[6] Only three months elapsed between the filing of Advance America's motion to dismiss and its motion to compel arbitration.  Hooper, 589 F.3d at 921.  In the instant case, by contrast, fully 13 months went by between the First MTD and the SAS Motion.  This extended delay is yet another reason why Defendants waived any right they might otherwise have had to arbitration.  See Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 159 (2d Cir. 2010) (noting that the "time elapsed from when litigation was commenced until the request for arbitration" is one of three factors courts consider in determining waiver).

[7] A denial of a motion pursuant to 9 U.S.C. § 3 for a stay of litigation pending arbitration is appealable immediately.  See 9 U.S.C. § 16(a)(1)(A).  This is the case no matter how frivolous the requested stay actually is.  Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 628-29 (2009).  In this Circuit, the trial court is not automatically divested of jurisdiction upon the filing of a notice of appeal alleging that the claims are subject to arbitration.  Motorola Credit Corp. v. Uzan, 388 F.3d 39, 54 (2d Cir. 2004) ("further district court proceedings in a case are not 'involved in' the appeal of an order refusing arbitration, and … a district court therefore has jurisdiction to proceed with a case absent a stay from this Court"), cert. denied, 544 U.S. 1044 (2005).

deciding whether [they] would be better off there or in arbitration," they also wanted to see how the AAA Proceeding was going before deciding if this SAS Covenant Lawsuit would be better for them in arbitration.

Only after Defendants obtained and processed Bergman II, the PFCCA and PO No. 3 did they file the SAS Motion.  Apparently, Defendants now believe they have a better chance of preventing class certification in arbitration than they do in this Court.[8]

Defendants' transparent attempt at forum shopping has caused massive prejudice to Plaintiffs.  First, Plaintiffs incurred immense unnecessary delay and expense opposing the Second MTD, the Third MTD and now the SAS Motion, which required a total of 78 pages of briefing by Plaintiffs to counter Defendants' 106 pages of total briefing.  Cf. Hooper, 589 F.3d at 923 (finding prejudice and waiver where plaintiffs were forced to file a 15-page opposition brief).

Second, the many months of unnecessary delay created by Defendants' three Motions to Dismiss and now the SAS Motion forced Plaintiffs and the putative class of similarly situated Residential Unit Owners to incur massive additional SAS fees.  See SAC ¶¶ 149-50 (fees for a three-bedroom unit are more than $20,000 per year regardless of occupancy, while fees for a studio unit are nearly $7,000 per year regardless of occupancy).[9]

---

[8] Defendants filed the Third MTD on June 7, 2012 (ECF No. 52).  Even at that very late date, they were content to request an on-the-merits judicial dismissal of SAC Count IV with prejudice.  See id. at 1, 11.  Question: What changed between June 7th and August 17th, when Defendants filed the instant SAS Motion in which they assert (at 12) that "[n]ow is the time" to compel arbitration of all SAC claims, including Count IV?  Answer: On July 10th, the Arbitrator issued the PFCCA and PO No. 3.

[9] Upon information and belief, the budgeted 2012 SAS fees for a three-bedroom lodge unit are more than $24,000 per year regardless of occupancy, while budgeted 2012 SAS fees for a studio unit are more than $7,500 per year regardless of occupancy.

Indeed, upon information and belief the putative class is, collectively, incurring new SAS fees of approximately $102,000 each month (based on 2012 budget estimates).  That is why it is urgent for Plaintiffs that this SAS Covenant Lawsuit move forward as soon as possible, and it also likely explains why Defendants are doing everything they can to slow it down.[10]

Third, Defendants' actions have prejudiced Plaintiffs' legal position severely.  As explained above, filing a dispositive motion on the merits causes procedural prejudice sufficient to find waiver, and Defendants have filed three such motions in this action.

An example of the substantive prejudice Plaintiffs suffered as a direct result of Defendants' motion practice is Defendants' successful request in the Second MTD to dismiss Plaintiffs' ILSA § 1703(a)(1) claim on statute-of-limitations grounds.  See Bergman II, 847 F. Supp. 2d at 667-68 (dismissing FAC Count V as time-barred).  If this matter had gone to arbitration at the outset (which, according to the SAS Motion, it could have), Plaintiffs' ILSA § 1703(a)(1) claim would not have been dismissed.  Indeed, there is no such thing as a motion to dismiss under the AAA Commercial Arbitration Rules.  (The same could be said for all the SAC claims dismissed in Bergman II.)

In addition, the operative statute of limitations, 15 U.S.C. § 1711(a)(1), which governs the time by which an ILSA "action" must be commenced, arguably does not apply in arbitration. See generally NCR Corp. v. CBS Liquor Control, Inc., 874 F. Supp. 168, 172 (S.D. Ohio 1993)

---

[10] Defendants may be hoping to have this Court send the SAS Covenant Lawsuit to arbitration only to ask the eventual arbitrator to send the claims back to this Court.  In fact, in the Declaration Lawsuit, Defendants played ping-pong with the claims, admitting to this Court in the fall of 2011 that the Declaration Lawsuit issues were arbitrable only to later advocate to the Arbitrator that none of the claims were arbitrable (except for an in-the-alternative breach-of-contract claim).  Cf. Bergman v. Spruce Peak Realty, LLC, No. 2:11-cv-127 (ECF No. 33), 2011 U.S. Dist. LEXIS 131366, at *6, slip op. at 4 (D. Vt. Nov. 14, 2011) ("The parties do not dispute that the SML Declaration contains a valid arbitration clause and that the issues underlying this lawsuit are arbitrable.") (emphasis in the original), and PO No. 3, at 6 (noting Respondents' position that Claimants' claims were non-arbitrable).  See also SAS Motion, at 14 (suggesting that Defendants could ask an arbitrator to reject arbitration of SAS Covenant-based claims).

("… the effect of a statute of limitations is to bar an action at law, not arbitration"), <u>modified on other grounds</u>, No. C-3-91-027, 1993 WL 767119 (S.D. Ohio Dec. 24, 1993), <u>aff'd</u>, 43 F.3d 1076 (6th Cir.), <u>cert. denied</u>, 516 U.S. 906 (1995); and <u>Clayton v. Unsworth</u>, 2010 VT 84, ¶ 20, 22-23, 8 A.3d 1066, 1073-74 (statutes of limitations do not apply in arbitration).

Plaintiffs' ILSA § 1703(a)(1) claim was a major threat to Defendants in part because that particular statute does not require proof of scienter, reliance or negligence.  <u>See</u> <u>generally</u> <u>Burns v. Duplin Land Dev., Inc.</u>, 621 F. Supp. 2d 292, 304 (E.D.N.C. 2009).  Having caused this Court to dismiss the claim on statute-of-limitations grounds, Defendants were then ready to move the matter to arbitration where they would not have to deal with what was essentially a strict liability ILSA claim.

Moreover, as the above-discussed case law makes clear, parties that lose dispositive motions in court are not permitted to take a second bite at the apple in arbitration.  The Second MTD (and pending Third MTD) failed to accomplish dismissal of what is now the SAC, and Defendants should not now be permitted to 'try their luck' on the remaining claims in arbitration.

Defendants' cynical and manipulative forum-shopping strategy is more than any adversary – or any legal system or tribunal – should have to tolerate.  As the District Judge in the <u>Hooper</u> case explained:

> Advance's motion to compel arbitration represents an attempt to take a proverbial second bite at the apple.  "An arbitration provision gives parties the choice of an alternative, nonjudicial forum to resolve their disputes, but it does not go so far as to allow or encourage the parties to proceed, either simultaneously or sequentially, in multiple forums."  <u>Lewallen</u>, 487 F.3d at 1093 (citation and internal quotation marks omitted).  If Advance had prevailed on its motion to dismiss and Plaintiffs now sought arbitration, would Advance not object to moving to an arbitration forum for reconsideration?   Not only would such reconsideration prejudice the parties, it would prejudice the legal system.  Parties must not be allowed to call upon Court resources to resolve substantive issues then, dissatisfied with the Court's resolution, reopen the same issues before an arbitrator.  This would place the Court in the inefficient and inappropriate position of issuing merely advisory opinions.  Advance's course of action demonstrates

that it is forum shopping: Advance filed its motion to compel arbitration only
after the Court refused Advance's motion to resolve the entire dispute primarily
on the merits.  Advance waived its right to arbitrate.

Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc., No. 2:08-cv-04045, 2008 WL

4371360, at *4 (W.D. Mo. Sept. 22, 2008) (footnote omitted), aff'd, 589 F.3d 917 (8th Cir.

2009).[11]

Finally, this is not the first time that SML, represented by the same counsel, has

attempted to move a long-pending Vermont-based litigation to arbitration.  According to the

plaintiff's March 14, 2012 opposition to SML's motion to compel arbitration in the since-settled

case of Merin v. Stowe Mtn. Lodge, LLC, Dkt. No. 91-4-10 Lecv (Vt. Super. Ct. Lamoille Cty.),

SML moved to compel arbitration 23 months into the case.  See **Exhibit C** hereto, at 9.  During

that lengthy period, SML "availed itself of the judicial process," including filing a motion to

dismiss Mr. Merin's fraud claim (Count III) shortly after he commenced the case.  Id.

SML's April 2, 2012 reply in support of its Merin motion to compel arbitration is telling

on multiple levels.  SML admitted therein that prejudice can be shown where the party seeking to

compel arbitration "sought arbitration after an unfavorable merits ruling by the court…."

---

[11] While the Eighth Circuit shared U.S. District Judge Nanette K. Laughrey's concerns about
forum shopping and the waste of judicial resources, such concerns did not control its affirmance.  Rather,
the Circuit Court focused on the prejudice to the plaintiffs (which exists in spades here, as well).  See
Hooper, 889 F.3d at 922 n.6.  As explained above, Defendants' forum shopping in the instant case is far
more blatant than what happened in Hooper.  Also, Defendants' use of this Court's resources, including
the 43-page Bergman II decision and the Court's review of the pending Third MTD, is far more extensive
than what took place in Hooper.  Finally, the Second Circuit's arbitration waiver analysis takes forum
shopping and judicial economy issues seriously.  See generally Louisiana Stadium & Exposition Dist. v.
Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 161 (2d Cir. 2010) ("We do not want parties to
forum shop, taking a case to the courts and then, if things go poorly there, abandoning their suit in favor
of arbitration.") (internal quotes, brackets and citation omitted); and id. at 160 ("While concern for
judicial economy alone is not a basis for finding waiver of a right to arbitration, the District Court's
expanded analysis accounting for the underlying MDL litigation – in addition to the unnecessary expense
and delay defendants incurred in this litigation thus far – justified a finding of waiver.") (emphasis added)
(citation omitted).

**Exhibit D** hereto, at 1 (emphasis added).  See also id. at 12 (admitting that "waiver is found on the basis of procedural gamesmanship that harms the other party").

Amazingly, SML claimed in its reply that "Merin cannot demonstrate this type of prejudice" because "there has been no adverse decision."  Id.  In reality, however, SML's predecessor counsel filed a motion back in May 2010 to dismiss Count III of Mr. Merin's complaint alleging fraud in the inducement.  That motion was denied on June 24, 2010.  See **Exhibit E** hereto.[12]

In Merin as well as in the instant case, SML and its present counsel filed motions to compel arbitration after receiving adverse rulings on dispositive motions.  The Merin case settled before the Vermont Superior Court ruled on SML's motion to compel arbitration.  Here, however, Defendants are forcing this Court to address and resolve the arbitration waiver issue even while their Third MTD is pending.

Lastly, in the Merin case SML protested that the plaintiff "provide[d] no proof, or even an unsworn statement, as to his expenses" in order to demonstrate prejudice.  See Exhibit D hereto, at 12.  Plaintiffs do not believe the law requires them to prove the enormous unnecessary expenses to which Defendants have thus far subjected them, including the costs associated with drafting and reviewing 184 pages of total briefing on the Second MTD and Third MTD, but upon request of this Court, Plaintiffs are prepared to do so (in camera, if possible).

---

[12] SML cannot claim that it believed when it moved to compel arbitration that Mr. Merin's fraud claim was non-arbitrable.  Indeed, SML asserted in its February 24, 2012 motion to compel arbitration that the fraud claim was arbitrable.  See **Exhibit F** hereto, at 5.

In sum, even if the SAS Motion were somehow timely, it would be baseless and moot because Defendants waived long ago any right they might otherwise have had to arbitration.[13]

## POINT IV

**EVEN ASSUMING THE SAS MOTION WERE SOMEHOW TIMELY AND THAT DEFENDANTS HAD NOT WAIVED THE RIGHT, IF ANY, TO ARBITRATION, THE MOTION IS BASELESS BECAUSE THE FEDERAL ARBITRATION ACT DOES NOT APPLY, THE SAS COVENANT'S ARBITRATION CLAUSE IS UNCONSCIONABLE, ILLUSORY AND OTHERWISE INVALID UNDER THE VERMONT ARBITRATION ACT AND VCIOA, THE SMLCOA LACKS STANDING TO BRING PLAINTIFFS' CLAIMS, BUT EVEN IF IT HAD STANDING, PLAINTIFFS' P&S AGREEMENTS DID NOT ASSIGN ANY RIGHTS TO THE SMLCOA, AND IT WOULD HAVE BEEN CLEARLY FUTILE FOR PLAINTIFFS TO ASK THE SMLCOA TO PRESS THEIR CLAIMS.**

Plaintiffs asserted in their 55-page November 30, 2011 Memorandum of Law in Opposition to Defendants' Motion to Dismiss the First Amended Class Action Complaint (ECF No. 35) that: (A) the SAS Covenant is a purely intrastate real estate-related services contract that has no substantial or direct connection to interstate commerce and, because the Federal Arbitration Act ("FAA") does not apply to such transactions, the arbitration clause is invalid since it does not comply with the Vermont Arbitration Act ("VAA") or VCIOA; (B) even assuming its officers were disinterested, under the associational standing doctrine, the SMLCOA would not have had standing to bring Plaintiffs' claims; (C) Plaintiffs' P&S Agreements did not assign any rights to the SMLCOA, but if they did, the Agreements did not transfer the claims asserted in this case; (D) it would have been clearly futile for Plaintiffs to ask the SMLCOA to press their claims, as Defendants control three of the five board members; and (E) the SAS

---

[13] Defendant SML is not a party to the SAS Covenant and claims against SML are not covered by the SAS Covenant's arbitration clause. Hence, SML could not have moved to compel arbitration at any time. As explained below in Point V, this is yet another reason to deny the SAS Motion.

Covenant's arbitration clause is unconscionable, illusory and unenforceable.  See ECF No. 35, at 9-16, 32.

Accordingly, even assuming Defendants' SAS Motion were somehow timely (but see Points I and II, above), and further assuming Defendants did not waive the right, if any, to arbitration (but see Point III, above), the SAS Motion is baseless because of the reasons set out in ECF No. 35.[14]

## POINT V

**SML IS NOT A PARTY TO THE SAS COVENANT AND CLAIMS AGAINST SML ARE NOT COVERED BY THE SAS COVENANT'S ARBITRATION CLAUSE, HENCE SML CANNOT FORCE PLAINTIFFS TO ARBITRATE WITH IT.**

The SAS Covenant was "made" solely by Defendant SPR as the Shared Amenities Unit Owner, and SPR is the only signatory to the SAS Covenant.  See ECF No. 41-13, at 1, 40. Defendant SML is not a party to the SAS Covenant, and claims against SML are not covered by the SAS Covenant's arbitration clause.  That clause purports to apply only to claims by an "Owner" against the Shared Amenities Unit Owner, i.e., Defendant SPR.  Id. at 38.

In other words, Defendants are now asking this Court to compel arbitration of claims by SAS Covenant non-signatories (Plaintiffs) against another SAS Covenant non-signatory (SML).

Vermont law governs the interpretation of the SAS Covenant.  Id. at 37.  Defendants have not cited any Vermont authorities, and Plaintiffs are not aware of any, requiring one non-

---

[14] In the past, Defendants have attempted to argue that there is some sort of inconsistency between Plaintiffs' positions that the FAA does not apply and that Defendants violated ILSA.  See Third MTD, at 8 & n.9.  Plaintiffs continue to maintain that there is no conflict between these assertions.  See Plaintiffs' July 5, 2012 Opposition to the Third MTD (ECF No. 53), at 15-16 n.7.  But there is no need for the parties to belabor the issue: Defendants admit in their Second MTD memoranda that this case involves interstate commerce (see ECF No. 28-1, at 21, and ECF No. 36, at 15).  These admissions support SAC Count IV (alleging a violation of ILSA § 1703(a)(2)).  Finally, the question of whether the FAA or VAA applies would be academic if this Court holds that the SAS Motion is untimely and/or that Defendants waived the right, if any, to arbitration.

signatory to an arbitration agreement to arbitrate with another non-signatory concerning claims not covered by the agreement.  Indeed, the VAA and VCIOA are clear that SML's (as well as SPR's) new demand that Plaintiffs' arbitrate the SAC claims is a legal nullity.  See 12 V.S.A. § 5652(b); and 27A V.S.A. § 4-117(b).  See generally Gates v. Gates, 716 A.2d 794, 800 (Vt. 1998) ("A court may not order the parties to submit their future disputes to arbitration without a voluntary agreement of the parties concerned, or a statute or rule authorizing such an order.").

In short, even if Plaintiffs' claims against SPR were somehow arbitrable (and, as explained herein and in ECF No. 35, they are not), Plaintiffs' claims against SML would not be arbitrable.  As such, Defendants' SAS Motion plea (at 1) for an "efficient mechanism" for resolving the parties' disputes rings extremely hollow.[15]

## POINT VI

### DEFENDANTS' FATALLY UNTIMELY AND LONG-SINCE WAIVED DIRECT BENEFITS ESTOPPEL AND THIRD-PARTY BENEFICIARY THEORIES TO COMPEL ARBITRATION ARE BASELESS.

After having spent more than a year and no doubt a small fortune trying unsuccessfully to get this Court to dismiss the entire SAS Covenant Lawsuit on the merits, Defendants pronounce suddenly that Plaintiffs must arbitrate with them because of "direct benefits estoppel" and/or the third-party beneficiary doctrine.  SAS Motion, at 9-12.

Leaving aside the SAS Motion's fatal delay and waiver defects, Defendants' new assertions about the supposed estoppel effects of SAS Covenant "benefits" running to Plaintiffs

---

[15] Even if some or all of the SAC claims were somehow arbitrable against SPR (and, as explained herein, they are not), neither side has agreed that the Arbitrator overseeing the current AAA Proceeding has jurisdiction to arbitrate such claims.  Nor has he offered or agreed to hear such claims.  If the SAS Motion were to be granted, Plaintiffs and Defendants would still have to agree on an arbitrator to arbitrate the SAS Covenant claims, and that person might not be Arbitrator Sochynsky (i.e., the parties could end up with a fourth contested matter, which is hardly consistent with the "efficient mechanism" the SAS Motion purports to envision).

are beyond baseless.  Perhaps Defendants forgot that the arbitration clause they now seek to enforce states: "Notwithstanding anything to the contrary in this [SAS] Covenant, <u>in no event shall any Owner have the standing to exercise any rights</u>" under the SAS Covenant.  ECF No. 41-13, at 38 (emphasis added).

Among the "rights" the SAS Covenant attempts to bar Owners from exercising are the rights to commence an individual arbitration <u>or</u> bring a lawsuit.  <u>Id.</u>[16]

It takes a "particularly high degree of chutzpah" to impose unilaterally on non-signatory owners a financially onerous (to say nothing of unconscionable and unlawful) adhesion covenant that runs in perpetuity, mandate therein that such owners have no rights whatsoever and that they cannot demand arbitration or sue in their own names, and then assert that these same owners, who are seeking to invalidate the covenant in Court, have reaped benefits from the covenant such that they are bound to arbitrate individually with the offending party.  <u>National Endowment for the Arts v. Finley</u>, 524 U.S. 569, 597 (1998) (Scalia, J., concurring).  <u>See generally</u> <u>Motorola Credit Corp. v. Uzan</u>, 561 F.3d 123, 128 n.5 (2d Cir. 2009) ("Courts in this Circuit have employed the 'classic definition' [of chutzpah] and contemporary variations where a party's conduct is especially and brazenly faulty.") (citing cases).

At a minimum, the SAS Covenant arbitration clause's explicit prohibition on owners invoking individual arbitration ("such Owner may only do so through action it causes the

---

[16] In their Second MTD reply brief, Defendants asserted audaciously that "even if the arbitration requirement of Article 12.14 of the SAS Covenant is somehow invalid …, that portion would merely be severed from the body of the SAS Covenant, leaving the remainder intact, <u>including</u> the limitation barring individual owners from bringing suit to enforce the covenant."  ECF No. 36, at 23 (emphasis added).  In other words, Defendants wanted this Court to consider blocking Plaintiffs from arbitration <u>and</u> litigation.  In Defendants' view of the world, apparently, "legitimate plaintiffs may be left without a remedy, and defendants may secure unlawful gains without the risk of being sued or prosecuted."  <u>Wright v. Honeywell Int'l, Inc.</u>, 2009 VT 123, ¶ 31, 989 A.2d 539, 552.  Fortunately, this Court saw right through the insidiousness of Defendants' Draconian 'heads I win, tails you lose' contractual 'analysis' and ruled that this SAS Covenant Lawsuit could proceed.  <u>See</u> <u>Bergman II</u>, 847 F. Supp. 2d at 666.

Condominium Association to take on its behalf") is sufficient to defeat Defendants' direct benefits estoppel and third-party beneficiary arbitration theories.[17]

Indeed, Defendants cannot defend the validity of a covenant that bars individual arbitration while insisting simultaneously that individual arbitration must occur.  Cf. Bergman II, 847 F. Supp. 2d at 663 (noting Defendants' Second MTD argument that "Plaintiffs lack standing because they are 'contractually barred' from bringing suit individually") (quoting ECF No. 28-1, at 19).

In sum, after having imposed a contractual ban on individual arbitration and having failed to win the SAS Covenant Lawsuit's dismissal via the judicial process, Defendants cannot seriously ask this Court to effectively re-write the SAS Covenant to require individual arbitration now that they think the requested re-write would benefit them.  To hold otherwise would render the concepts of 'estoppel' and 'beneficiaries' essentially meaningless.

## POINT VII

### PLAINTIFFS AGREE THAT THE SAS COVENANT LAWSUIT AND THE DECLARATION LAWSUIT SHOULD BE CONSOLIDATED, HOWEVER DEFENDANTS ARE NOT ENTITLED TO A STAY OF THE CONSOLIDATED LITIGATION.

### A.    Consolidation of the SAS Covenant Lawsuit and the Declaration Lawsuit.

Plaintiffs agree that the SAS Covenant Lawsuit and the Declaration Lawsuit should be consolidated.  See Plaintiffs' Motion to Lift the Stay, Amend Complaint and Consolidate Actions (Aug. 18, 2012) (Declaration Lawsuit ECF No. 39), at 6-7.

---

[17] The arbitration clause is just one of the SAS Covenant's many one-sided, overly harsh and therefore substantively unconscionable provisions.  See generally ECF No. 35, at 31-32.  The SAS Covenant is procedurally unconscionable, as well.  See id. at 29-31.  Why Defendants suddenly believe they can impose arbitration on Plaintiffs after this Court ruled in Bergman II that the SAS Covenant Lawsuit could go forward remains a mystery.

**B.    Defendants are Not Entitled to a Stay of the Consolidated Litigation.**

The FAA requires a stay of court proceedings <u>only</u> where the issue before the court is "referable to arbitration under an agreement in writing for such arbitration…."  9 U.S.C. § 3. The FAA's stay provision does not apply to non-arbitrable claims.  <u>See</u> <u>generally</u> <u>Bergman v. Spruce Peak Realty, LLC</u>, No. 2:11-cv-127 (ECF No. 33), 2011 U.S. Dist. LEXIS 131366, at *5, slip op. at 3-4 (D. Vt. Nov. 14, 2011) (quoting FAA § 3).

As an initial matter, <u>none</u> of the claims in the Declaration Lawsuit that Plaintiffs moved recently to un-stay are arbitrable.  <u>See</u> <u>generally</u> <u>Plaintiffs' Motion to Lift the Stay, Amend Complaint and Consolidate Actions</u> (Aug. 18, 2012) (Declaration Lawsuit ECF No. 39), at 4-5.

As far as the SAS Covenant Lawsuit is concerned, Plaintiffs explain above and in ECF No. 35 why <u>none</u> of those claims are arbitrable, either.  More importantly, this Court already ruled in <u>Bergman II</u> that the SAS Covenant Lawsuit could proceed.  <u>See</u> 847 F. Supp. 2d at 666.

In short, there are no claims in either Court case that are referable to arbitration. Therefore, Defendants are not entitled to a stay of the requested consolidated lawsuit or of either case individually.[18]

There are numerous other reasons why a stay of the would-be consolidated litigation does not make sense given the distinctness of that Court case from the AAA Proceeding, including:

- The AAA Proceeding is extremely narrow and currently involves only nine non-class Claimants, whereas the consolidated litigation is far broader in scope and involves approximately 324 putative class members;

- The nine named <u>non</u>-class Claimants in the AAA Proceeding are not requesting relief under the SAS Covenant;

---

[18] Defendants' SAS Motion request for a stay of the would-be consolidated litigation pending arbitration assumes the Court has acceded to Defendants' request to compel arbitration of the SAS Covenant Lawsuit.  <u>See</u> SAS Motion, at 3-4, 26.  For all the reasons stated above, Plaintiffs suggest respectfully that this Court should not compel arbitration of the SAS Covenant Lawsuit, or any of the individual claims therein.

- Plaintiffs in the SAS Covenant Lawsuit are not requesting relief under the SML Declaration;

- The SAS Covenant is not mentioned in any of the FAAD counts (see Declaration Lawsuit ECF No. 39-3);

- The SAS Covenant is not an exhibit to the FAAD;

- The short description of the SML Declaration allocations in the SAC (¶¶ 171-79) was provided as background information solely to: (A) show that Plaintiffs would never have the voting interests to force the SMLCOA to bring an arbitration proceeding on their behalves; and (B) show that SPR is responsible for 22.59% of the Condominium assessments;

- The short description of the SAS Covenant in the FAAD (Declaration Lawsuit ECF No. 39-3, ¶¶ 96-112) was provided as background information solely to show that Respondents are violating VCIOA (or in the alternative, the SML Declaration) by charging Claimants for a portion of SPR's condominium assessments;

- The Arbitrator did not so much as mention the SAS Covenant in the PFCCA or PO No. 3;

- The SAS Covenant Lawsuit's claims against Defendant SML are not arbitrable under any conceivable scenario, hence referring those claims to arbitration and then staying the litigation pending arbitration would be a complete waste of time and resources, as the arbitrator would need to send the claims back to Court;

- Final resolution of the AAA Proceeding will not moot the SAS Covenant Lawsuit because, inter alia, the AAA Proceeding has nothing to do with the unconscionability of the SAS Covenant;

- Final resolution of the SAS Covenant Lawsuit will not moot the AAA Proceeding because, inter alia, the SAS Covenant Lawsuit does not address the discriminatory nature of the SML Declaration's voting and expense allocations;

- SAS fees are accruing to the SAS Covenant Lawsuit's putative class members at an alarming clip of approximately $102,000 per month, and it would be unfair, prejudicial and crushing financially to delay the determination of the SAS Covenant's enforceability; and

- The best way to get to a final resolution of the consolidated litigation and the AAA Proceeding is to allow both matters to run concurrently.  Otherwise, Defendants will attempt to exploit any stay or delay to their financial and logistical advantage.

In sum, Plaintiffs agree with Defendants that the SAS Covenant Lawsuit and the Declaration Lawsuit should be consolidated. However, Defendants are not entitled to a stay of the consolidated litigation.

<u>**CONCLUSION**</u>

For the reasons stated above, Plaintiffs request respectfully that the Court deny Defendants' August 17, 2012 SAS Motion (ECF No. 57) in all respects and award such other relief as the Court deems just and proper.

DATED:     September 4, 2012
               Stowe, Vermont

                                   Respectfully submitted,

                                   BARR & ASSOCIATES, P.C.

                                   <u>/s/ Daniel A. Seff, Esq.</u>
                     By:    Russell D. Barr, Esq.
                             Jennifer J. Lajoie, Esq.
                             Daniel A. Seff, Esq.

                                   125 Mountain Road
                                   Stowe, VT 05672
                                   Phone: 802-253-6272
                                   Fax: 802-253-6055
                                   Email: dan@barrlaw.com

                                   *Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 4, 2012, I electronically filed with the Clerk of Court the above-captioned document using the CM/ECF system.  The CM/ECF system will provide service of such filings via Notice of Electronic Filing (NEF) to the following NEF parties:

Defendant Spruce Peak Realty, LLC; and
Defendant Stowe Mountain Lodge, LLC.


DATED:        September 4, 2012
              Stowe, Vermont

Respectfully submitted,

BARR & ASSOCIATES, P.C.

/s/ Daniel A. Seff, Esq.

By:    Daniel A. Seff, Esq.

125 Mountain Road
Stowe, VT 05672
Phone: 802-253-6272
Fax: 802-253-6055
Email: dan@barrlaw.com

*Attorneys for Plaintiffs*